**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

**LEIGH ANN ENGH, DARCENE AND GREG LANSING,** and **THE CARPENTERS & JOINERS WELFARE FUND,** on behalf of the general public, themselves and all other similarly situated,

       Plaintiffs,

vs.

**SMITHKLINE BEECHAM CORPORATION** d/b/a **GLAXOSMITHKLINE**,

       Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 07-3483 (MJD/SRN)

---

Christopher L. Coffin, Pendley, Baudin & Coffin, LLP, Karen Barth Menzies and Michael L. Baum, Baum, Hedlund, Aristei, Goldman & Menzies, PC, and Shawn Raiter and T. Joseph Snodgrass, Larson King, LLP, Counsel for Plaintiffs

Chad A. Peterson, Dwight J. Davis, Meghan H. Magruder, and Stephen B. Devereaux, King & Spaulding LLP, Jan R. McLean Bernier, Scott Smith, and Tracy J. Van Steenburgh, Helleland Lewis Nilan & Johnson PA, Counsel for Defendant.

---

## I.    INTRODUCTION

On November 1, 2007, this Court granted Plaintiffs' Motion to Remand [Docket No. 24] and stated that a Memorandum of Law would follow. Accordingly, the Court issues this Memorandum of Law.

## II.    FACTUAL BACKGROUND

This class action, filed on August 20, 2004, involves the prescription drug paroxetine, sold under the trade name Paxil® and Paxil CR™ ("Paxil") and marketed by SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK").  Plaintiffs, residents of Minnesota, seek to represent a class of persons or entities who purchased or paid for Paxil in Minnesota, Illinois, Missouri, North Dakota, and Ohio for consumption by a person under the age of 18 years.  (Second Amended Compl. ¶ 12; Ex. 1 to Def.'s Notice of Removal.)  Plaintiffs allege that GSK misrepresented information concerning the safety and efficacy of Paxil for treating pediatric depression. (Id. ¶ 10.)  Specifically, Plaintiffs allege that GSK has "allowed positive information about pediatric use of paroxetine to be disclosed publicly, but has withheld and concealed negative information concerning the safety and effectiveness of the drug as a treatment for pediatric patients."  (Id. ¶ 18.) Plaintiffs claim violations of state consumer protection provisions, including unfair and deceptive business practices and false advertising, as well as unjust enrichment for the sale of Paxil to minors under false pretenses.  (Id. ¶¶ 88, 94.)

Until GSK filed its Notice of Removal on July 23, 2007, this case was pending before the Hennepin County District Court.  Plaintiffs filed their original complaint on September 2, 2004.  On October 6, 2006, the Third

Judicial Circuit in Madison County, Illinois granted preliminary approval of a nationwide class settlement in the case <u>Hoormann v. SmithKline Beecham Corp.</u>, Case No. 04-L-715.  Pursuant to the settlement agreement, GSK must pay 100% of the out-of-pocket costs that individuals incurred for Paxil ultimately used by children.  (Settlement Agreement ¶ 7-8; Ex. C to Raiter Aff.)  The present action was stayed pending the resolution of the <u>Hoormann</u> case.  The <u>Hoormann</u> settlement received final approval on May 17, 2007.  Plaintiffs then moved Hennepin County District Judge Mel I. Dickstein to lift the stay and asked for leave to amend their complaint to move The Carpenters & Joiners Welfare Fund (the "Fund") from an absent class member position into a class representative role.  (Ex. F to Raiter Aff.)

Judge Dickstein granted the motion to lift the stay and add a new class representative.  (Ex. H to Raiter Aff.)  Plaintiffs served the Second Amended Complaint on July 13, 2007, and filed it with the Hennepin County court on July 23, 2007.  (Ex. I to Raiter Aff.)  GSK immediately filed a Notice of Removal to this Court.  [Docket No. 1].  Plaintiffs, in turn, filed the instant motion.

### III.   DISCUSSION

GSK contends that the addition of the Fund to Plaintiffs' action brings the case under this Court's original jurisdiction pursuant to 28 U.S.C. ¶ 1331 and Section 502(e) of the Employee Retirement Income Security

Act, 29 U.S.C. §§ 1001 et seq. ("ERISA").  Therefore, according to GSK, this action was properly removed to federal district court as provided by 28 U.S.C. §§ 1367, 1441.  In addition, GSK alleges that removal is proper under the requirements of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA").

Plaintiffs argue that GSK's notice of removal is procedurally defective, because it was untimely filed.  In addition, they deny both that the Court has subject matter jurisdiction over the case and that removal is appropriate under the provisions of CAFA.  They ask the court to return this matter to the state court for resolution.

### A.    Timeliness

A party must remove a case within thirty days of receiving "an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).  Upon a proper motion to remand, the failure to timely file removal papers results in the waiver of the right to remove the case. See Mousel v. Knutson Mortg. Corp., 823 F. Supp. 658, 661-62 (D. Minn. 1993).  Failure to file a timely notice of removal is a procedural defect that may be waived if the opposing party does not assert the argument within thirty days of the alleged untimely removal notice.  28 U.S.C § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of

subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 528 (8th Cir. 1996) ("A procedural defect in removal, such as untimeliness, does not affect the federal court's subject matter jurisdiction and therefore may be waived.")  The Court has broad discretion to decide that a party waived the timeliness argument.  Piper Jarray & Co. v. Severini, 442 F. Supp. 2d 1016, 1020 (W.D. Wis. 2006) ("[A] district court has broad discretion in deciding whether a plaintiff has waived its right to object to procedural irregularities in removal proceedings.").

Plaintiffs first raise their untimeliness argument in their September 17, 2007 Reply Memorandum in Support of Motion for Remand.  [Docket No. 44].  GSK's removal notice was filed almost two months prior to this date.  In similar situations, federal courts have held that the defendant did not raise the timeliness issue in a timely manner and, thus, waived any objection to the removal due to procedural defect.  See, e.g., Northern Ca. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1038 (9th Cir. 1995) (holding that procedural defects cannot be raised later than 30 days after the notice of removal is filed, whether or not a timely remand motion was filed under 28 U.S.C. 1447(c)); Hoste v. Shanty Creek Mgmt., Inc., 346 F. Supp. 2d 776, 780 (W.D. Mich. 2002) (holding GSK's assertion of untimeliness was untimely when first raised 36 days after the

notice of removal was filed, despite the timely filing of a remand motion). The Court finds the reasoning in Pittsburg-Des Moines and Hoste to be sound. The Court will not entertain Plaintiffs' argument that remand in necessary due to untimeliness of the removal notice when Plaintiffs first raised the issue in its reply brief almost two months after the removal notice was filed.

### B. Federal Question Jurisdiction

The federal district courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 551 (2005). Federal district courts may not exercise jurisdiction absent a statutory basis. Id.; Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rest upon the party asserting jurisdiction." (internal quotations and citation omitted)). A defendant may remove a matter to the federal district court only if the matter could have been brought to the Court from its commencement. 28 U.S.C. § 1441(a); Phipps v. F.D.I.C., 417 F.3d 1006, 1010 (8th Cir. 2005).

The district court must remand a case whenever it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. In re Bus. Men's Assurance Co., 992

F.2d 181, 183 (8th Cir. 1993). When deciding a motion to remand, the Court must resolve all doubts concerning federal jurisdiction in favor of remand to state court. Id.

The "well-pleaded complaint" rule generally prohibits removal of an action filed in state court when no federal question appears on the face of the complaint. Rosati v. Cleveland-Cliffs, Inc., 259 F. Supp. 2d 861, 867 n.6 (D. Minn 2003). Under one exception to the well-pleaded complaint rule, certain federal regulations completely preempt state laws and invoke the Court's federal subject matter jurisdiction. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987). In such cases, even if the complaint only provides for recovery under state law, federal law preempts the state law claims for the purpose of subject matter jurisdiction and removal is appropriate. Id. at 63-64.

The Supreme Court of the United States has applied this doctrine to actions governed by Section 502(a), which contains ERISA's civil enforcement provisions. Id. at 66. Therefore, even when a plaintiff asserts only state law claims, an action is removable to federal court if the claims fall within the scope of § 502(a). Id. In evaluating whether the doctrine of complete preemption applies in a particular case, other courts in this district have analyzed the following three factors: (1) whether the plaintiff has standing to bring a claim under ERISA; (2) whether the subject matter

of the plaintiff's state law claims fall within the scope of § 502(a); and (3) whether the claims can be resolved without an interpretation of an ERISA-governed employee benefit plan. Workforce Dev., Inc. v. Corp. Benefit Servs. Of Am., Inc., 316 F. Supp. 2d 854, 857 (D. Minn. 2004) (Kyle, J.); Blaylock v. Hynes, 104 F. Supp. 2d 1184, 1186-87 (D. Minn. 2000) (Montgomery, J.).

### 1. Do Plaintiffs have Standing to Bring an ERISA Claim?

GSK argues and Plaintiffs concede that the Fund, as a fiduciary, has standing generally to assert certain types of claims under ERISA. See 29 U.S.C. § 1132(a)(2)-(3) (permitting civil actions to be brought by fiduciaries for appropriate relief for breach of fiduciary duty, to enjoin any act or practice which violates ERISA, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the plan). Therefore, the resolution of this issue will rest upon the Court's analysis of the remaining two prongs of the complete preemption inquiry.

### 2. Do Plaintiffs' Claims Fall Within the Scope of § 502(a)?

Next, the Court must consider whether Plaintiffs' claims fall within the scope of § 502(a). To do so, "the claim must seek to recover benefits, to enforce rights, or to clarify rights to future benefits." Tovey v. Prudential Ins. Co. of America, 42 F. Supp. 2d 919, 925 (W.D. Mo. 1999). A claim is

within the scope of § 502(a) where the "essence of [the plaintiff's] claim rests on the denial of benefits." Hull v. Fallon, 188 F.3d 939, 943 (8th Cir. 1999). In other words, "federal question jurisdiction exists—and the case may be removed to federal court—if [Plaintiffs'] state law claims arise in an area that has been displaced by ERISA." Id. Thus, the Court must resolve the question of whether Plaintiffs' claims under state consumer protection law and for unjust enrichment, see Second Am. Compl. ¶¶ 93-97, fall within the scope of ERISA.

GSK argues that Plaintiffs' unjust enrichment claim is akin to the type of equitable relief allowed by Section 502(a)(3) of ERISA. Section 502(a)(3) authorizes: (1) "a participant, beneficiary or fiduciary;" (2) to bring a civil action seeking "appropriate equitable relief;" (3) for the purpose of redressing any violations of ERISA or the terms of the plan or enforcing any provisions of ERISA or an ERISA plan. 29 U.S.C. § 1132(a)(3). Plaintiffs point out that Section 502(a)(3) provides for injunctive relief and "redress" rather than monetary damages as requested by Plaintiffs (and the Fund) in their complaint. Citing the Supreme Court's decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), Plaintiffs claim that any suit that seeks to compel the GSK to pay money damages is a suit for legal, rather than equitable, relief under ERISA. Under Great-West, Plaintiffs' claims for monetary relief will only be

9

considered "equitable" when the money sought can be "clearly traced to particular funds or property in the GSK's possession." Id. at 213.

Here, Plaintiffs argue, the funds sought have long been dissipated and are not readily ascertainable. Therefore, Plaintiffs contend that they are seeking legal, rather than equitable, restitution and their claims do not fall within the scope of ERISA. See Nechis v. Oxford Health Plans, Inc., 328 F. Supp. 2d 469, 478 (S.D.N.Y. 2004), aff'd 2005 WL 2018630 (2d Cir. 2005) (holding that claims for "damages," "unjust enrichment," "disgorgement of ill-gotten gains," and for "legal" restitution are unavailable under § 502(a)(3)); Space Gateway Support v. Prieth, 371 F. Supp. 2d 1364, 1370 (M.D. Fla. 2005) (declining to recognize unjust enrichment as a claim available under ERISA); Mead v. Andersen, LLP, 309 F. Supp. 2d 596, 599 (S.D.N.Y. 2004) (holding that plaintiff's theory of unjust enrichment could not be classified as equitable under Great-West and must therefore be dismissed as improper under § 502(a)(3)).

GSK argues that the claim for unjust enrichment is an equitable remedy under Minnesota law, citing First Integrity Bank v. The Ohio Casualty Ins. Co., No. 05-2761 (MJD/RLE), 2006 U.S. Dist. LEXIS 30426, at *15 (D. Minn. May 15, 2006) (Davis, J.) and MG Incentives, Inc. v. The Stanley Works, No. 05-2637 (DSD/JJD), 2006 U.S. Dist. LEXIS 44510, at *5 (D. Minn. June 27, 2006) (Doty, J.). Therefore, GSKs argue that Plaintiffs'

unjust enrichment claims clearly falls within the scope of Section 502(a)(3).

GSK also argues that the Court's analysis does not mirror a Rule 12(b)(6) inquiry into whether Plaintiffs can state a claim under ERISA. According to GSK, ERISA may preempt certain state law claims without providing substitute relief under § 502(a). Therefore, GSK says the Court's inquiry is not restricted to an exploration of whether Plaintiffs' claims are cognizable as ERISA claims under Section 502(a)(3).

GSK is correct that the Court does not have to undertake a Rule 12(b)(6) inquiry to decide this prong. The second prong of the test for complete ERISA preemption merely requires the Court to determine whether Plaintiffs' claims seek to recover denied benefits, to enforce rights, or to clarify rights to future benefits of their plan. Hull, 188 F.3d at 943 (8th Cir. 1999); Tovey, 42 F. Supp. 2d at 925 (W.D. Mo. 1999). Plaintiffs make essentially two claims. First, they claim that GSK's actions, relating to the sales and marketing of Paxil, constitute false advertising, unfair and deceptive business practices under the common law and the laws of each representative state. Second, Plaintiffs claim that GSK's misrepresentations and non-disclosures of material fact (regarding the risks and dangers imposed by Paxil among other things) caused GSK to be unjustly enriched at the expense of the putative class members and the public. None of these

claims seek "to recover benefits, to enforce rights, or to clarify rights to future benefits" or implicate any area displaced by ERISA.  Unjust enrichment and consumer protection claims seeking recovery of money damages for amounts paid to non-ERISA entities for an allegedly dangerous and falsely marketed product are not within the scope of ERISA's provisions.  Therefore, GSK has not satisfied the second prong of the inquiry.

### 3. Can Plaintiffs' Claims be Resolved without Interpretation of an ERISA Plan?

Where the resolution of "state law claims is inextricably intertwined with and substantially dependent upon the analysis of the terms of the . . . agreement, the [] claims are thus subject to the complete preemption doctrine."  Workforce, 316 F. Supp. 2d at 858-59 (citing Schuver v. MidAmerican Energy Co., 154 F.3d 795, 799 (8th Cir. 1998).

GSK argues that Plaintiffs' claims touch on core ERISA relationships and that their resolution will require interpretation of ERISA statutes and ERISA-regulated plan documents.  GSK relies on the Eighth Circuit's decision in Lyons v. Phillip Morris Inc., 225 F.3d 909 (8th Cir. 2000).  The Lyons plaintiffs were fiduciaries of ERISA welfare benefit plans.  They brought state law claims in Minnesota state court against tobacco companies to recover the higher administrative costs the plan incurred by

12

paying benefits to treat participants' tobacco-related illnesses.  Lyons, 225 F.3d at 911.  The tobacco companies removed the case to federal district court on the grounds that the plans' claims were completely preempted by ERISA.  Id.  Chief Judge Magnuson denied the plans' motion to remand.  Id.  The Eighth Circuit affirmed, reasoning that, regardless of whether the plans alleged claims under Minnesota law or ERISA, their grievance "impact[ed] core ERISA relationships," because "[t]he Trustees' claims to recover benefits paid are no better than the as-yet-unasserted claims by plan beneficiaries who directly suffered the alleged tobacco-related injuries, and who would be entitled to recover heath care costs if successful."  Id. at 913.

The Lyons court was concerned that beneficiaries' rights of recovery might be affected by the outcome of the case if the beneficiaries did not intervene.  If they did intervene, the Lyons court was concerned that the apportionment of damages would depend on plan provisions regarding subrogation and assignment of claims.  Id.  GSK claims several questions will need to be resolved if the Plan recovers amounts it expended on benefits for plan participants, for example: (1) whether Fund participants are entitled to additional benefits from the Fund; and (2) if so, whether proceeds will remain in the Fund and redound to all participants or must the Fund distribute recovered amounts to plan participants who received plan benefits in the form of Paxil.

According to Plaintiffs, claims for out-of-pocket expenses by plan participants or beneficiaries have been settled by the resolution of Hoormann.  Therefore, this case does not involve any threat of a Fund-beneficiary intervening in the present action or being bound by an adverse decision as in Lyons.  Plaintiffs note that merely the need to reference a plan or its provisions does not trigger preemption.  Tovey v. Prudential Ins. Co. of Am., 42 F. Supp. 2d 919, 926 (W.D. Mo. 1999); Central Laborers Welfare Fund v. Philip Morris Inc., 85 F. Supp. 2d 875, 891 (S.D. Ill. 1998). Finally, Plaintiffs note that some of the state law claims the plan trustees in Lyons were asserting included requests for what was undeniably equitable relief, even under Great-West.  Because Lyons was decided before Great-West, Plaintiffs contend that Lyons is called into question or, perhaps, impliedly overruled by Great-West.

The questions that GSK claims involve ERISA relationships may implicate the subrogation provisions of the plan documents, however, they are tangential matters and do not appear to be "inextricably intertwined" with resolution of Plaintiffs' claims.  In addition, the reasoning in Lyons was based in part on the ruling in Southern Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996).  Southern Council been called into question by the Supreme Court's Great-West decision.  See, e.g., Primax

Recoveries Inc. v. Carey, 247 F. Supp. 2d 337, 341 n.4 (S.D.N.Y. 2002) (outlining the Circuit split that was resolved by the Great-West decision).

GSK has not adequately shown that the Court has subject matter jurisdiction over this matter due to complete ERISA preemption. The only remaining question is whether GSK can establish federal jurisdiction under CAFA.

### C.   Jurisdiction Pursuant to the Class Action Fairness Act

Under 28 U.S.C.¶ 1332(d), the Court has subject-matter jurisdiction over a class action in which: (1) there are 100 or more members in Plaintiffs' alleged class; (2) there is minimal diversity; and (3) based on Plaintiffs' allegations, the claims of the putative class members exceed the aggregate sum or value of $5,000,000, exclusive of costs and interest. CAFA only applies to civil actions that are "commenced" on or after February 18, 2005. See 28 U.S.C. § 1332 note. CAFA, however, does not qualify the meaning of "commence." State law, rather, determines when a suit is commenced for CAFA purposes. See Plubell v. Merck & Co., Inc., 434 F.3d 1070, 1071 (8th Cir. 2006).

In Minnesota, service of a summons and complaint upon the GSK commences a civil action. Minn. R. Civ. P. 3.01. When the plaintiff files an amended complaint in a civil action pending in state court before CAFA's effective date, the Court must determine whether the amendment relates

15

back to the original complaint or is instead a new action.  <u>Plubell</u>, 434 F.3d at 1071.  If the amendment relates back, no new civil action was commenced by the amendment, and there is no jurisdiction under CAFA.

In <u>Plubell</u>, the defendant drug company attempted to remove the case arguing that moving an absent class member into a named representative position constituted a newly commenced action.  <u>Id.</u>  The plaintiffs moved to remand and the district court granted their motion.  <u>Id.</u>  On appeal, the Eighth Circuit analyzed whether the amendment related back to the original complaint.  To make the determination, the court borrowed the approach of Rule 15(c)(3) of the Federal Rules of Civil Procedure.  <u>Id.</u> at 1072.  Accordingly, an amendment will relate back "if the GSK knew or should have known that it would be called on to defend against claims asserted by the newly-added plaintiff, unless the GSK would be unfairly prejudiced in maintaining a defense against the newly-added plaintiff."  <u>Id.</u> (citations omitted).

The <u>Plubell</u> court rejected the notion that adding a plaintiff commenced a new action: "Both the original and the amended pleadings set forth exactly the same conduct by Merck; the only difference is the class representative."  <u>Id.</u> at 1073.  When considering whether the addition of the new class representative would prejudice the GSK, the court noted that "the claims alleged in both the original and the amended pleadings are exactly

16

the same, reprinted verbatim." Id. The Plubell court further noted that the new class representative had always been a member of the putative class and, therefore, was only new as a named representative. Therefore, the Plubell court also found that the addition did not prejudice the GSK.

GSK argues that Plaintiffs' recent amendment commenced a new case under CAFA, because the original complaint did not place GSK on notice of the facts relevant to the Fund's claim. Specifically, GSK argues that the Fund's claims will require:

> the consideration of facts not implicated by an Individual Plaintiff's claim, including: (1) the process by which entities approve drugs (or place those drugs on their formularies); (2) the process by which entities determine whether they will reimburse members for purchases of drugs; (3) the process by which entities determine whether they will reimburse members for purchases of drugs prescribed for off-label uses; (4) the sophistication of each entity; (5) whether each entity ever considered the alleged misrepresentations from GSK; and (6) whether each entity had any ability under its plan to choose not to reimburse members for drug purchases regardless of the circumstances.

(Def.'s Brief in Opp. at 20-21.) In addition, GSK contends that Plubell is distinguishable, because Plaintiffs did not merely substitute a class member that fell within a clear, already-stated class definition, as did the Plubell plaintiffs. Specifically, GSK argues that the term "entities" is vague and that the Individual Plaintiffs' discovery responses misled GSK into thinking that their insurance carriers were outside of the putative class definition.

17

Plaintiffs aver that the <u>Plubell</u> decision is directly on point and precludes GSK's argument that the changes in Plaintiff's Second Amended Complaint commenced a new action under CAFA.  When Plaintiffs filed their class action on August 30, 2004, they indicated they were seeking to represent a class of "all persons or entities who purchased and/or paid for paroxetine under the trade name Paxil and/or Paxil CR in the states of Minnesota, Illinois, Missouri, North Dakota and Ohio for consumption by a minor."  Therefore, Plaintiffs claim that their recent amendment merely added a named class representative—one of the "entities" described in their original complaint.

When Judge Dickstein considered the Plaintiffs' motion to amend the complaint, he heard argument similar to those GSK raises here.  Judge Dickstein found that: (1) GSK was on notice that the class included certain entities, because Minnesota is a notice pleading state and the original complaint specifically defined the putative class to include entities; (2) there was no "new claim" added to the case and, thus, there was no prejudice to GSK; and (3) the <u>Hoormann</u> settlement justifies the addition of the Fund as a named plaintiff; and (4) any prejudice caused by the close of the discovery period can be cured by re-opening discovery with respect to issues raised by the addition of the new named plaintiff.  <u>Engh v. SmithKline</u>, No. 27CV04-012879, at **5-6 (Hennepin Cty. Dist. Ct. June 29,

18

2007) (Ex. 9 to Raiter Dec.).  The Court finds Judge Dickstein's reasoning sound with respect

In addition, a close examination of Plaintiffs' original Complaint and the Second Amended Complaint shows that the amendments merely added the Fund to introductory paragraphs and to the paragraphs introducing the parties.  It appears that Plaintiffs have done nothing more than move an absent class member into the role of a named class representative.  There were no changes to the Plaintiffs' allegations or causes of action; no new claims were added.  <u>Plubell</u> is controlling; the Court does not have jurisdiction under CAFA.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

Defendant's Motion to Dismiss [Docket No. 7] is **DENIED AS MOOT**.


Dated: November 20, 2007                    s / Michael J. Davis
                                            Judge Michael J. Davis
                                            United States District Court